# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>United States Department of Justice<br>Enforcement and Affirmative Litigation<br>Branch<br>450 5th St. NW, Suite 6400,<br>Washington, DC 20530<br><br>      **Plaintiff**,<br><br>   v.<br><br>**RENTGROW, INC.**,<br>a Delaware Corporation,<br>400 5th Ave., Suite 120,<br>Waltham, MA 02451<br><br>      **Defendant**. | **Case No.: 1:26-cv-2415**<br><br><br>**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF** |

Plaintiff, the United States of America, acting upon notification from the Federal Trade Commission ("FTC" or "Commission"), for its Complaint, alleges:

1. Plaintiff brings this action for Defendant's violations of Section 5(a) of the FTC Act ("FTC Act"), 15 U.S.C. § 45(a), and the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681-1681x. For these violations, Plaintiff seeks relief, including a permanent injunction, civil penalties, and other relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); and Section 621(a) of the FCRA. 15 U.S.C. § 1681s(a).

## SUMMARY OF THE CASE

2. Defendant furnishes background screening reports to assist landlords and property managers in selecting tenants for rental housing ("Tenant Screening Reports"). These Tenant Screening Reports are typically assembled with a variety of public and non-public information about tenant applicants, including credit report information, criminal records, eviction records, rental history information, and historical address information, as well as a determination of

1

whether the applicant meets, conditionally meets, or does not meet rental eligibility criteria set by the property manager.

3.    Through its sale of Tenant Screening Reports, Defendant operates as a consumer reporting agency and has violated the FCRA and FTC Act by:

a.    Failing to:  (1) follow reasonable procedures to assure maximum possible accuracy of the information it reports about applicants; (2) disclose to the consumer upon request all information contained in the consumer's file and the sources of the information; and (3) follow reinvestigation requirements applicable to resellers of consumer reports, in violation of the FCRA; and

b.    Misrepresenting to consumers who have successfully disputed their Tenant Screening Report that Defendant has reported to property managers (*i.e.*, prospective landlords) that information was removed and/or changed as a result of the dispute, in violation of Section 5 of the FTC Act.

### JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

5.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c)(2), 1395(a), and 15 U.S.C. § 53(b).

### PLAINTIFF

6.    Plaintiff brings this action upon notification from the FTC, pursuant to Section 16(a)(1) of the FTC Act, 15 U.S.C. § 56(a)(1).  The FTC is an agency of the United States Government created by the FTC Act.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or

2

affecting commerce.  The FTC also enforces the Fair Credit Reporting Act, which imposes duties upon consumer reporting agencies, pursuant to Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a).

## DEFENDANT

7.      Defendant RentGrow, Inc. ("RentGrow") is a Delaware limited liability company with its principal place of business at 400 Fifth Avenue, Suite 120, Waltham, MA 02451. RentGrow transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, RentGrow has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

8.      At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold Tenant Screening Reports to customers throughout the United States.

## COMMERCE

9.      At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

10.      The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date.  The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003 and the Dodd-Frank Act amended the FCRA in July 2010.

11.      Under Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendant from violating the FTC Act and the FCRA.  Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC

Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

12.    Defendant, through the provision of tenant screening services, is and has been a "Consumer Reporting Agency," as defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f). That section defines a Consumer Reporting Agency as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing [C]onsumer [R]eports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing [C]onsumer [R]eports.

Defendant regularly, in interstate commerce, sells information on consumers that it assembles and evaluates for the purpose of furnishing Consumer Reports to third parties, as described further below.

13.    The FCRA further defines a "Reseller" in Section 603(u) of the FCRA, 15 U.S.C. § 1681a(u), as:

> [A Consumer Reporting Agency] that (1) assembles and merges information contained in the database of another [Consumer Reporting Agency] or multiple [Consumer Reporting Agencies] concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

Defendant regularly describes itself as and acts as a Reseller Consumer Reporting Agency, as described further below.

14.    The FCRA imposes several obligations on Consumer Reporting Agencies, including obligations to:  (1) follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the Consumer Report relates, 15

4

U.S.C. § 1681e(b); (2) upon a consumer's request, disclose to the consumer all information contained in the consumer's file and the sources of the information, 15 U.S.C. § 1681g(a); and (3) conduct a reasonable reinvestigation of consumer disputes regarding the completeness or accuracy of information and record the current status of the disputed information, including modifying or deleting it as appropriate, 15 U.S.C. § 1681i(a).  These obligations are described in more detail below.

15.    The FCRA generally exempts resellers from the dispute-related obligations contained in 15 U.S.C. § 1681i(a), but instead imposes other obligations on resellers who receive a notice from a consumer of a dispute concerning the completeness or accuracy of any item of information contained in a consumer report on such consumer produced by the reseller, 15 U.S.C. § 1681i(f).  Resellers who receive such notice must, within 5 business days, and free of charge, determine whether the item being disputed is incomplete or inaccurate as a result of an act or omission of the reseller.  If incomplete or inaccurate as a result of an act or omission of the reseller, the reseller must correct or delete the information within 20 days.  If the disputed information is not incomplete or inaccurate as a result of an act or omission of the reseller, the reseller must convey the notice of the dispute and all relevant information the consumer provided to each Consumer Reporting Agency that provided the reseller with the information that is the subject of the dispute.

## Defendant's Tenant Screening Reports Are Consumer Reports Subject to the Requirements of the FCRA

16.    Defendant furnishes Tenant Screening Reports about consumers through its ScreeningWorks Pro product to thousands of client rental property owners and property management companies to assist them in selecting tenants.  These Tenant Screening Reports include records from multiple sources, such as public record information (*e.g.*, records of

residential eviction proceedings and criminal records), credit report information, and records related to rental history.

17.    Defendant obtains the information for its Tenant Screening Reports from other Consumer Reporting Agencies and is a "Reseller" under Section 603(u) of the FCRA, 15 U.S.C. § 1681a(u).

18.    The Tenant Screening Reports that Defendant sells to clients are "Consumer Reports" as defined in Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d).  That section defines a "Consumer Report" as:

> [A]ny written, oral, or other communication of any information by a [C]onsumer [R]eporting [A]gency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604.

Defendant's Tenant Screening Reports are communicated directly to third parties; bear on, among other things, consumers' credit worthiness, general reputation, and personal characteristics; and are used as a factor in determining the consumer's eligibility for purposes specified in Section 604 of the FCRA, 15 U.S.C. § 1681b, which include a business transaction initiated by consumers, § 1681b(a)(3)(F).

19.    Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), a violation of the FCRA constitutes an unfair or deceptive act or practice, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Defendant's Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

20.    Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires that "[w]henever a [C]onsumer [R]eporting [A]gency prepares a [C]onsumer [R]eport it shall follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

21.    In numerous instances, Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information it included in its Tenant Screening Reports. Specifically, Defendant did not follow reasonable procedures to prevent the inclusion of duplicative case records and multiple entries for the same criminal or eviction action in Tenant Screening Reports.

22.    Public record information about criminal and eviction cases can include different types of events and can come from different sources.  For example, duplicative records reflecting the same criminal convictions might be stored in different public records repositories (such as separate county and state-level databases), and a single eviction proceeding might involve different events such as a new case filing and a judgment of possession.

23.    When reporting criminal records in Tenant Screening Reports, Defendant's procedure was frequently to list the same conviction multiple times as though they were separate records in the results listed on the Tenant Screening Report.  That practice made it appear that applicants had more criminal records than they actually did.

24.    Likewise, Defendant frequently reported eviction court records by listing multiple entries for each record, such that different events in a court proceeding (for example, an initial case filing and a judgment) would each appear to be separate eviction records.  That practice made it appear that applicants had a lengthier eviction history than they did.

25.    Defendant's procedures caused consumer criminal and eviction histories to appear more voluminous than the actual number of cases present.

26.     When Defendant received public records from other Consumer Reporting Agencies, the records were often received with clear headers and with different events in a particular record grouped together.  Nevertheless, Defendant disregarded that formatting in favor of its own.

27.     For example, in one Tenant Screening Report disputed by an applicant, Defendant displayed three eviction history events separately, as though the consumer had three separate records.  However, the applicant actually had only two records – two of the displayed events were separate parts of the same eviction case.  Indeed, in the records received by Defendant and used to generate the disputed Tenant Screening Report, the three events were clearly separated into two proceedings.  Defendant disregarded that formatting and failed to display the two proceedings in a manner that was not misleading and inaccurate.

28.     In another disputed Tenant Screening Report, Defendant listed six records, enumerating each record (*i.e.*, record one, record two, … record six) separately, even though all but two of the records were duplicates.  Because of poor and confusing presentation (*e.g.*, small fonts, absence of clear headers and breaks between records, display of the same record across multiple pages, not having duplicative records grouped together), it appeared as if the consumer had six records.  In reality, the consumer only had two records.

29.     In many instances Defendant would display a single criminal record multiple times as though each one was a separate record.  In one disputed Tenant Screening Report, Defendant listed 15 separate criminal charges across seven criminal records for the applicant, even though multiple records and charges were duplicative. On the basis of that criminal history, RentGrow determined that the consumer did not meet the prospective landlord's screening eligibility criteria, but when the consumer disputed the Tenant Screening Report on the basis that

none of the records actually matched the consumer, all 15 of the records were removed from the report.  As a result, Defendant's initial determination that the consumer did not meet the landlord's criteria was reversed from denial to acceptance.

30.    Defendant knowingly failed to follow reasonable procedures that would prevent the appearance of duplicate records and multiple entries on its Tenant Screening Reports. Defendant knew it was reporting these duplicative records and failed to implement any procedures at all to keep duplicative records and misleading multiple entries from appearing on its Tenant Screening Reports in the first place.

31.    As a result of Defendant's failure to follow reasonable procedures to assure maximum possible accuracy, in multiple instances, Defendant furnished Consumer Reports with inaccurate information regarding consumers, including current or prospective tenants.

32.    Since at least 2018, Defendant has received disputes about its reporting of inaccurate and misleading information.  Nonetheless, Defendant did not make changes to its practices and procedures that addressed these failures until after the FTC initiated its investigation.

33.    Defendant's failure to follow reasonable procedures to assure maximum possible accuracy of Consumer Reports can lead to prolonged housing searches, additional application fees, higher rental payments and security deposits, or even denial of housing.

34.    These failures constitute violations of Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

## Defendant's Failure to Disclose All Information and Sources of Information in Consumer File Disclosures

35.    Sections 609(a)(1) and 609(a)(2) of the FCRA, 15 U.S.C. § 1681g(a)(1)-(2), require Consumer Reporting Agencies to, among other things, "upon request, . . . clearly and

accurately disclose to the consumer:  (1) All information in the consumer's file at the time of the request . . . [and] (2) The sources of the information . . . " ("File Disclosure").

36.    This statutory requirement is important because it enables consumers to dispute an inaccuracy at the source to help prevent the reoccurrence of the inaccuracy in information that the source provides to third parties.

37.    Defendant typically obtains public record information, including criminal records and eviction records, from multiple sources, including directly from the jurisdiction through court-managed databases or records, and from third-party public record vendors and consumer reporting agencies.

38.    Defendant also obtains address history information from LexisNexis's Accurint database, which provides a full list of past addresses for the applicant, as well as additional name information (*e.g.*, middle names), among other data.

39.    Defendant uses the LexisNexis Accurint address history and name information to locate additional addresses and supplement missing middle names and initials for applicants where that information was not provided in the original application.  The LexisNexis Accurint information is valuable to Defendant because it provides data that Defendant cannot otherwise obtain, for example, from the consumer's application and the credit report information that Defendant receives from other vendors.

40.    Defendant also provides the information obtained from LexisNexis Accurint to the third-party vendors from whom it obtains criminal and eviction history records.  The vendors use the information from LexisNexis Accurint, along with information from the consumer's application and the credit report information, to search for and match public records to the

10

applicant, which the vendors then send back to Defendant for inclusion in Tenant Screening Reports.

41.     In numerous instances, without the supplemented LexisNexis Accurint address history and name information, Defendant would not be able to match an applicant to certain public records, particularly in instances where the public record itself has limited identifiers.

42.     Defendant also retains the data (*i.e.*, address history and name information) obtained from LexisNexis Accurint and uses it to verify matching when a consumer disputes public records in their Tenant Screening Report.

43.     However, Defendant does not disclose its use of LexisNexis Accurint data to consumers who request File Disclosures.  In particular, Defendant does not disclose to consumers that it used LexisNexis Accurint address history data or middle names to prepare their Tenant Screening Report, even when the LexisNexis Accurint data is stored in Defendant's databases and provided the crucial link to match a public record to the consumer requesting the File Disclosure.  Defendant also fails to identify LexisNexis Accurint as a source of information in the consumer's file.  These failures to disclose constitute violations of Section 609(a)(1) and 609(a)(2) of the FCRA, 15 U.S.C. § 1681g(a)(1)-(2).

### Defendant's Failure to Follow Reinvestigation Requirements Applicable to Resellers of Consumer Reports

44.     Section 611(a) of the FCRA, 15 U.S.C. §1681i(a), sets forth the procedures that Consumer Reporting Agencies are required to follow in cases of disputed accuracy (*e.g.*, if a consumer disputes information on a consumer report as being inaccurate or incomplete).

45.     Among other things, Section 611(a) provides that if the completeness or accuracy of information in a consumer's file is disputed by the consumer, and the consumer notifies the Consumer Reporting Agency either directly or through a reseller, the Consumer Reporting

11

Agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and the Consumer Reporting Agency must record the current status of the disputed information (or delete the item from the file).

46.     However, Consumer Reporting Agencies that are resellers like Defendant – which generally means that they assemble and merge information from the databases of other Consumer Reporting Agencies to create consumer reports, but do not themselves store that information or use it to generate new consumer reports – are excluded from most of the reinvestigation requirements in Section 611(a) of the FCRA.  Instead, they are subject to the requirements of Section 611(f).

47.     FCRA Section 611(f), 15 U.S.C. § 1681i(f), requires that, if the completeness or accuracy of any item of information contained in a consumer report produced by a reseller is disputed by the consumer, within five days the reseller shall determine whether the disputed information is incomplete or inaccurate as a result of something the reseller did.  If the information is incomplete or inaccurate due to something the reseller did, the reseller must correct or delete the information within twenty days.  If not, the reseller must forward the dispute to each Consumer Reporting Agency that provided the reseller with the information.

48.     Defendant purports to be a reseller but nonetheless has failed to comply with the requirements of resellers under Section 611(f).

49.     Defendant has routinely designated certain types of consumer disputes as "invalid."  In doing so, Defendant failed to determine whether the disputed information was incomplete or inaccurate as a result of Defendant's acts or omissions and, where appropriate, failed to correct or delete such information.  Defendant also failed to forward these disputes to the Consumer Reporting Agency that furnished the disputed information.  Those types of

disputes include: (1) disputes concerning the reporting of duplicate records; and (2) disputes concerning changes to records that occurred after the Tenant Screening Report was prepared.

50.    When Defendant received a dispute about a duplicate record, its obligation as a reseller was first to determine whether the information was incomplete or inaccurate as a result of Defendant's act or omission. For the reasons discussed in Paragraphs 23-31, had Defendant actually conducted that inquiry, it most likely would have been answered in the affirmative, and the duplicate records would have been removed. However, Defendant did not conduct that inquiry, nor did Defendant convey the duplicate record dispute to the Consumer Reporting Agency that provided the information being disputed. These failures constitute violations of Section 611(f) of the FCRA, 15 U.S.C. §1681i(f).

51.    When Defendant received a dispute about changes to records that occurred after the Tenant Screening Report was prepared, it similarly failed to meet either of its obligations as a reseller under Section 611(f). Defendant neither sought to determine whether the reported information was incomplete or inaccurate as a result of something the Defendant did, nor did it convey the dispute to the Consumer Reporting Agency that furnished the disputed information. Instead, it would declare the dispute invalid. These failures constitute violations of Section 611(f) of the FCRA, 15 U.S.C. §1681i(f).

52.    As of January 2024, and well after the initiation of the FTC's investigation into Defendant's consumer reporting practices, Defendant changed its dispute policy regarding: (1) criminal records that are updated after the Tenant Screening Report is furnished, and (2) disputes claiming that a Tenant Screening Report has duplicate records. Those disputes are no longer treated as invalid and are instead forwarded to the Consumer Reporting Agency that provided the record to Defendant.

13

53.     However, Defendant still maintains that other disputes are invalid if they are based on changes to the record after the initial report was prepared.  For example, RentGrow confirmed in March 2024 that it would still treat as invalid a dispute in which the consumer claimed that civil court records were inaccurate because the records changed after the Tenant Screening Report was prepared.  Defendant still treats such disputes as invalid, and they are not forwarded to the Consumer Reporting Agency that provided the record, despite RentGrow's obligation as a reseller to convey the dispute to the Consumer Reporting Agency.  These failures constitute violations of Section 611(f) of the FCRA, 15 U.S.C. §1681i(f).

## VIOLATIONS OF THE FTC ACT

54.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

55.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Defendant's Business Practices Violate Section 5(a) of the FTC Act

56.     When a consumer disputes inaccurate, incomplete, or unverifiable information in their Tenant Screening Report and Defendant transmits the dispute along with relevant information from the consumer to the Consumer Reporting Agency that originally provided Defendant with the disputed information, Defendant typically receives the results of the dispute reinvestigation from the Consumer Reporting Agency and provides notification to the consumer informing them of the results of their dispute.

57.     In many instances, where consumers have successfully disputed information in their Tenant Screening Reports and had information deleted or changed as a result, but the initial decision to reject the consumer's rental application did not change as a result of the dispute (*e.g.*,

14

an erroneous or duplicate eviction record was removed but the applicant was still "rejected" for another reason), Defendant has sent correspondence to the consumer stating that "The investigation is complete and the results are attached.  Additionally, ***we notified the property where you applied that your Tenant Screening Report has been updated***." (emphasis added).

58.    But contrary to Defendant's statements to consumers, in instances where the updated information did not result in a change to the applicant's screening result (*e.g.*, accept or decline), the statement Defendant sent to the landlord or property manager did not reference updates to the consumer's Tenant Screening Report at all.  Instead, in such instances, Defendant's correspondence to the prospective landlord or property manager only stated that "The investigation is complete and there were no changes to the applicant's screening result."

59.    Under Section 611(d) of the FCRA, a consumer who has successfully disputed information on their consumer report (whether as a result of inaccuracy or for some other reason) has the right to request that notification of the updates be sent to anyone who has screened the consumer in the preceding six months and received a report containing the deleted information.

60.    But for Defendant's misrepresentation, a consumer may have exercised their right under the FCRA to have Defendant inform the landlord or property manager of the results of the dispute.  Alternatively, the consumer may have directly alerted the landlord or property manager of the successful dispute, potentially providing additional information or explanation to supplement their application for housing.  In many instances, Defendant's misrepresentation may have led to prolonged housing searches, additional application fees, higher rental payments, or even denial of housing.

61.    In numerous instances, Defendant's correspondence described in Paragraph 57 misrepresented to consumers that Defendant notified prospective landlords or property managers

15

that Defendant removed and/or corrected inaccurate, incomplete, or unverifiable information following a consumer's dispute of their Tenant Screening Report.

62.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendant is violating or is about to violate laws enforced by the Commission.

### Count I – Violations of Section 607(b) of the FCRA

63.    In numerous instances, Defendant has failed to use reasonable procedures to assure maximum possible accuracy of Consumer Report information.

64.    Therefore, Defendant's acts or practices, as described in Paragraphs 20 through 34, violate Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II – Violations of Section 609(a) of the FCRA

65.    In numerous instances Defendant has failed to provide File Disclosures or the sources of information contained in a consumer's file in response to consumers' requests.

66.    Therefore, Defendant's acts or practices, as described in Paragraphs 35 through 43, violate Section 609(a) of the FCRA, 15 U.S.C. § 1681g(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count III – Violations of Section 611 of the FCRA

67.    In numerous instances Defendant has failed to comply with required procedures for resellers in the case of disputed accuracy.

68.    Therefore, Defendant's acts or practices, as described in Paragraphs 44 through 53, violate Section 611 of the FCRA, 15 U.S.C. § 1681i, and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count IV – Deceptive Statements Regarding Landlord Notification
### of Changes to Tenant Screening Reports

69.     In numerous instances in connection with the sale of Tenant Screening Reports, Defendant has represented, directly or indirectly, expressly or by implication, that landlords or property managers have been notified of post-dispute changes to consumers' Tenant Screening Reports.

70.     In fact, in numerous instances in which Defendant have made the representations described in Paragraph 57, landlords are not notified of post-dispute changes to consumers' Tenant Screening Reports.

71.      Defendant's practices as described in Paragraphs 56 through 62 constitute deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

72.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act and the FCRA.  Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## CIVIL PENALTIES

73.     Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice of violations.  Defendant's violations of the FCRA, as alleged in this Complaint, have been knowing and have constituted a pattern or practice of violations.  As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, the Court is authorized to award a penalty of not more than $4,983 per violation for penalties assessed after January 17, 2025.

17

74.     Each instance in which Defendant has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. § 1681s.  Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A.     Enter a permanent injunction to prevent further violations of the FTC Act and FCRA;

B.     Impose civil penalties for each violation of the FCRA as alleged in this Complaint; and

C.     Award Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

DATED: July 9, 2026

**Of Counsel:**

**FOR THE UNITED STATES OF AMERICA:**

**WHITNEY MOORE**
D.C. Bar No. 496842
**JAMIE E. HINE**
IL Bar No. 6281852
**KAMAY LAFALAISE**
NC Bar No. 48739
Federal Trade Commission
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC 20580
Mail Stop CC-8232
(202) 326-2645 (Moore)
(202) 326-3392 (Fax)

**BRETT A. SHUMATE**
Assistant Attorney General
Civil Division

**SARMAD M. KHOJASTEH**
Deputy Assistant Attorney General

**LISA K. HSIAO**
Acting Director
Enforcement and Affirmative Litigation Branch

**ZACHARY A. DIETERT**
Assistant Director

/s/ Jordan A. Ryan Rinear
**JORDAN A. RYAN RINEAR**
PA Bar No. 330349
Trial Attorney
Enforcement and Affirmative Litigation Branch
U.S. Department of Justice
450 5th St., N.W.
Washington, D.C. 20530
Telephone (202) 598-7294
Fax: (202) 514-8742
Email: jordan.a.ryan.2@usdoj.gov